# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID E. FOURNIGAULT, JOSEPHINE H. MERLO, ARMANDO MEDINA, ROSA MEDINA, WANDA G. FREEMAN, DEBORAH E. MILLER, MARK F. KLEEMEIER, DEANNA J. KLEEMEIER, RICHARD W. BAIER, and DIANE L. BAIER, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENCE ONE MORTGAGE CORPORATION,<br><br>Defendant. | No. 94 C 1742<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This case first arrived on my docket in February of 1994 after being transferred from the U.S. District Court for the Western District of New York for consolidation with other similar cases. It is one of the few cases of its type that remains. At the time the original Complaint was filed, Independence One Mortgage Corporation (IOMC) serviced approximately 155,000 mortgages on properties located in all 50 states and the District of Columbia. In 1994, IOMC sold its assets to Norwest, including the servicing rights to approximately 120,000 loans. The records associated with IOMC's loans were also transferred to Norwest. Since that time, IOMC has not been in the business of servicing mortgage loans.

In September of 1996, the Plaintiffs moved for certification of a nationwide class. An agreed upon order was entered by this Court on September 18, 1997 certifying five subclasses all of which included only those mortgages being serviced by IOMC as of September 30, 1994. The

date was important because it limited the class to loans which were "open," i.e. being serviced at the time IOMC transferred its loans to Norwest. The order did not address the status of those potential class members with "closed" loans, loans that were paid off before September 30, 1994, other than to say that Plaintiffs' pending motion for class certification was withdrawn. In March of 2000, Plaintiffs moved for certification of the remainder of the class.

During supplemental briefing on the issue, the Seventh Circuit handed down its decision in *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 288 F.3d 1012 (7th Cir. 2002). *In re Bridgestone/Firestone* made certification of a nationwide class inappropriate where the litigants' cases were governed by differing state laws. Thereafter, on October 7, 2003, I denied class certification for both the "open" and "closed" loans and invited Plaintiffs to file for certification of narrower classes. Plaintiffs subsequently brought a renewed motion to certify a statewide class in New York, and were granted leave to file Third, Fourth and Fifth Amended Complaints, adding class representatives for the Illinois, Florida, Michigan, New Jersey, Ohio, South Carolina and Texas subclasses. Plaintiffs now move to certify all seven subclasses.

**Analysis**

In considering Plaintiffs' motion for class certification, I may not conduct a preliminary inquiry into the merits of the underlying claims. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-178 (1974). However, I may look beyond the pleadings to determine whether the requirements of Rule 23 are met. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 677 (7th Cir. 2001). In order to proceed as a class action, the Plaintiffs must prove their action meets the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *Eisen*

*v. Carlisle & Jacqueline*, 417 U.S. at 163; *See also Calkins v. Fidelity Bond & Mortgage Co.,* No. 94 C 5971, 1998 U.S. Dist. LEXIS 16144, at *2 (N.D. Ill. Oct. 8, 1998).

In addition to the four express requirements of Rule 23(a), there are two implied requirements: (1) that an identifiable class exists ("definiteness"), and (2) that the named representatives are members of the class. *LeClercq v. Lockformer* Co., No. 00 C 7164, 2001 U.S. Dist. LEXIS 2115, at *5 (N.D. Ill. Feb. 23, 2001). A class can be properly identified so long as it is defined by objective criteria. *Id*. at *5-6. This criteria must make it administratively feasible for the court to determine whether a particular individual is a class member. *Curtis v. Voss*, 73 F.R.D. 580, 582 (N.D. Ill. 1976); *See also* 7A Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure,* §1760, at 120-121 (1972).

IOMC first claims Plaintiffs have not adequately set forth identifiable subclasses. In particular, IOMC argues that the subclasses are not definite because they include persons that could not assert a contract claim. All of the descriptions include borrowers "who had their escrow deposits calculated in the same manner as was used in the case of plaintiffs." However, this description does not relate to whether IOMC actually breached its contracts with those borrowers. In response, Plaintiffs have changed the contested definition.

For each state, the subclass representing that state now consists of persons: (1) whose claims are within the statute of limitations for that state;[1] (2) that were obligated on or owned real property within that state, secured by a real estate mortgage providing for an escrow for taxes and

---

[1]For all subclasses, the day is August 19th and the applicable year is based on the statute of limitations for that state. In Ohio, the cutoff year is 1978; for Illinois, the year is 1983; for New York the year is 1987; for Michigan, the year is 1987; for Florida, the year is 1988; for Texas, the year is 1989; for South Carolina, the date is any time after 1990.

3

insurance; (3) that had a mortgage escrow account with the defendant; (4) whose escrow balances were maintained at levels above those mandated by contract or by law; and (5) whose escrow balances having been disclosed as overages were maintained in their accounts rather than being returned or credited to them. In addition to persons owning real property within the state, the New York sub-class also includes persons that were obligated on or owned shares of stock in a cooperative apartment corporation and the proprietary lease appurtenant thereto in respect to a cooperative apartment located in the State of New York (a "cooperative apartment"). These subclass definitions now meet the standard of objective criteria that make it administratively feasible for me to determine who is a member.

Next, IOMC claims that the subclasses are not definite because it will not be possible to ascertain the class members. IOMC points to the fact that it does not maintain copies of its former customers' mortgages, and Plaintiffs have not tried to obtain the records from Norwest. This is not relevant to a showing of definiteness. "The parties should not have to delve into the merits of the case to determine membership in the class." *LeClercq*, 2001 LEXIS 2115, at \*6. At this point, investigating whether or not certain prospective class members will fit the criteria goes too far in the direction of judging the merits. I do not yet need to address the issue of whether specific class members will be able to prove their membership, I am only concerned with having the proper criteria to evaluate them by when the time comes. This criteria is objective enough for me to use when deciding whether or not a potential class member qualifies.

It is clear that the named Plaintiffs are all members of their respective subclasses. Therefore, I find Plaintiffs have met the implied requirements for class certification.

**Rule 23(a) Requirements**

The four requirements of Rule 23(a) the Plaintiffs must prove to proceed as a class are, in short: numerosity, commonality, typicality, and adequacy.

**Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining the number of class members, precise numbers are not required so long as the plaintiff makes a good faith estimate. *LeClercq*, 2001 U.S. Dist. LEXIS 2115 at *11. Generally, classes with more than one hundred plaintiffs satisfy the numerosity requirement. *In re VMS Ltd. Pshp. Sec. Lit.,* No. 90 C 2412, 1992 U.S. Dist. LEXIS 14445, at *4 (N.D. Ill. Sept. 23, 1992); *Johnson v. Brelje*, 482 F. Supp. 121, 123 (N.D. Ill. 1979). This is because joinder of hundreds of persons "would stretch the facilities and abilities of this Court beyond their elastic limit." *Johnson,* 482 F. Supp. at 123 (citing *Cullen v. U.S.,* 372 F. Supp. 441, 447 (N.D. Ill. 1974)).

In their original Class Certification motion, Plaintiffs claimed that the potential class consisted of thousands of mortgagors. Although Plaintiffs did not state in any of their more recent filings what they believe the actual number to be now, I find it to be highly likely that the class would consist of more than 100 potential Plaintiffs. Therefore, I find that the potential class is sufficiently numerous as to make joinder impracticable.

**Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs can meet this requirement by showing a common nucleus of operative facts exists between the named plaintiffs and the class. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (citing *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative facts is said to exist when a defendant has "engaged in standardized conduct towards members of the proposed class." *Keele,* 149 F.3d at 594. IOMC claims that even if the Plaintiffs prove their claims, that does not necessarily establish the claims of other class members. IOMC's reasoning is that different mortgage forms contain different provisions regarding the maintenance of the escrow accounts. This reasoning is flawed.

The standardized conduct that IOMC is accused of engaging in is keeping a excess amount of money in each mortgagee's escrow account, rather than following its obligations under either contract law or state law to return or credit that excess balance. Although there may be a slight variation in the excess amount due to the different forms, the existence of factual variation among members of a proposed class does not necessarily destroy commonality. *Rosario v. Livaditis,* 963 F.2d 1013, 1017-18 (7th Cir. 1992). The slight differences between the allowable excess balances for each person are not great enough to overshadow the standardized conduct of IOMC failing to properly credit or refund the excess payments. Therefore, I find that Plaintiffs have sufficiently established commonality.

**Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(c). The issue of typicality is closely related to commonality and should be liberally construed. *See Keele*, 149 F.3d at 595; *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 U.S. Dist. LEXIS 15472, at *12-13 (N.D. Ill. Sept. 26, 2001). The typicality requirement can be met when the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

As with commonality, typicality may be found even where there are factual distinctions between the claims of the named plaintiffs and the claims of other class members. *Id*. Here, although IOMC claims that the same factual differences that weigh against commonality also apply to typicality, the Plaintiffs and the other class members' complaints arise out of the same course of conduct – IOMC's failure to credit or refund surplus amounts in Plaintiffs' escrow accounts. For this reason, I find Plaintiffs have established typicality.

**Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class. *In re VMS,* 1992 U.S. Dist. LEXIS 14445 at *13.

While IOMC does not actually allege that class counsel is inadequate, it claims that Plaintiffs have not met their burden of affirmatively showing that counsel is adequate. However, class counsel has appeared in front of me numerous times for cases under this MDL, and I find them adequate to represent Plaintiffs. I also do not find any interests antagonistic to those of the class.

Next, IOMC claims that the sub-class representatives are not adequate to represent the class members. In particular, IOMC argues that the representatives from South Carolina and Florida are unable or unwilling to participate in a trial, the representative from Michigan is both unwilling or unable to participate, and does not know whether or not IOMC held excess funds in her account, and the class representatives for the Ohio sub-class do not understand their responsibilities as class representatives.[2]

Contrary to IOMC's belief, the Michigan representative's lack of knowledge about her particular account is not enough reason to disqualify her. "[T]here is no requirement that the representative plaintiff be knowledgeable of either the allegations or the legal theories on which the lawsuit rests." *Paper Sys., Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 609 (E.D. Wis. 2000). Each subclass representative only needs to be a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). In order to meet this low standard, "a class representative need only possess general knowledge of the case and participate in discovery." *Thompson v. City of Chicago*, No. 01 C 6916, 2002 U.S. Dist. LEXIS 10627, at *18 (N.D. Ill. June 12, 2002). By virtue of their deposition testimony, the representatives for Michigan,

---

[2]IOMC does not dispute the adequacy of the representatives for the New York, Illinois and Texas sub-classes. I find that these representative meet the requirements for adequacy under Rule 23(a)(4).

Florida, South Carolina and Ohio have all shown a willingness to participate in discovery and a general knowledge of the case, regardless of the shortcomings that IOMC argues. Therefore, I find that all of the subclass representatives are adequate.

**Rule 23(b)(3)**

Since the Plaintiffs have satisfied the four requirements of Rule 23(a), I must now consider whether they have satisfied at least one subsection of Rule 23(b). Rule 23(b)(3) has the following two requirements: (1) the common questions of law or fact predominate, and (2) the class action is the superior form of adjudication. Fed. R. Civ. P. 23(b)(3).

**Predominance**

Considerable overlap exists between the court's determination of commonality and a finding of predominance. *Mejdreck v. The Lockformer Co.,* 2002 U.S. Dist. LEXIS 14785, at *17-18 (N.D. Ill. Aug. 12, 2002) (citing *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts. *Mejdreck*, 2002 LEXIS 14785 at *18 (citation omitted).

IOMC has several arguments against predominance. First, it claims that the different contract language for each form would require an individual determination for each person as to the amounts that IOMC was required to deposit into the escrow account. Second, IOMC claims that individual issues predominate within each subclass concerning whether the amounts

9

deposited by each subclass member actually breached the terms of the mortgage contract. Finally, IOMC claims that individual issues of whether claims are time-barred will predominate.

I find IOMC's arguments unpersuasive. The subclass definitions clearly state the date at which the statute of limitations would apply for an action based on a written contract in each respective state. Therefore, individual issues of whether a subclass member's claim is time-barred cannot predominate, because persons that are time-barred will not be class members.

Individual issues about differing contract language also will not predominate. As Plaintiffs note, there are only three separate types of contract provisions at issue in this case, and it is easy to determine which kind of contract each class member used based on the date. That information will determine the amount that IOMC was allowed to keep in escrow for each class member. IOMC's concern about keeping track of the specific deposits made by each class member is misplaced because it is not necessary to keep track of all the deposits. To determine the amount of damage to each class member, I would only need to compare the amount left in each escrow account immediately after taxes were paid to the amount that IOMC was allowed to retain in escrow under the applicable law. Any excess over the allowable amount is money that was overescrowed. These small calculations do not predominate over the common issues.

Also, in a case such as this one which deals with the patterns and practices of IOMC, punitive damages can be awarded to the class as a whole without determining liability with respect to individual class members. Questions concerning IOMC's alleged systemic overescrowing predominate over individual questions. The very nature of a pattern or practice action requires evidence of widespread harm, which is usually shown through evidence concerning more than a single individual, and considering the potential large size of this class

and the similarities among their allegations regarding IOMC's policies and practices, a class action is the most efficient and effective way to litigate these claims.

**Superiority**

IOMC also contests whether the superiority requirement is satisfied. Its reasoning is based on Plaintiffs' counsel's solicitation of individuals to act as subclass representatives. IOMC points to cases in which other courts have found that the solicitation of a class representative by Plaintiff's counsel amounted to an abuse of the class action vehicle. IOMC also argues against superiority on the basis that there is no way to determine the specifics of each borrower's account.

IOMC's argument about class counsel's solicitation of representatives is ineffective. As I have stated before, in cases where the client's recovery is small in relation to the costs of prosecuting the case, the class action is usually a project of the lawyer, rather than the Plaintiffs. *See Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118 (N.D. Ill. 1993). I do not see any evidence of impropriety in the attorney's communications. Therefore, I see no reason to deny class certification solely on the basis of the attorney's proper solicitation.

The difficulty of determining the specifics of each borrower's account also does not defeat superiority.[3] The issue in this case is IOMC's alleged policies and practices. The lack of evidence due to the passage of time may injure both parties. It is possible that Plaintiffs may not have enough evidence to prove their case, but it is also possible that IOMC will not have enough

---

[3]Although the issue of spoilation is raised briefly by Plaintiffs, there is no evidence to suggest bad faith as the reason for IOMC's inability to provide account statements. Rather, the simple passage of time and transfer of records from one corporate entity to another over time has made it more difficult. However, both sides will have to deal with this difficulty.

evidence to defend itself from the allegations. However, IOMC has already produced the account records for all of the class representatives, which suggests that it may still possess the necessary records for others. Even if it cannot, the information already provided may be enough to prove Plaintiff's case. Regardless of the outcome, this possible evidentiary issue is not sufficient grounds at this stage to deny class certification on the basis of superiority.

Since common questions of law and fact predominate, trying these claims separately would result in a large amount of repetition. Thus, I find proceeding as a class action is the superior form of adjudication for this case. The proof regarding the history of IOMC's maintenance of escrow accounts will be almost identical and it "would be neither efficient nor fair to anyone, including the defendants, to force multiple trials to hear the same evidence." *LeClercq*, 2001 U.S. Dist. LEXIS 2115 at *21 (citing *Boggs v. Divested Atomic Corp.*,141 F.R.D. 58, 67 (S.D. Ohio 1991)). Furthermore, repetitive discovery for individual cases would also be wasteful. *LeClercq*, 2001 U.S. Dist. LEXIS 2115 at *21. For these reasons, I find Plaintiffs have satisfied Rule 23(b)(3).

For the above reasons, Plaintiff's motion for class certification is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 21, 2006